J-A26002-20
J-A26003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GLEBA, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRI-STATE AUTO AUCTION, INC., | : | No. 2108 EDA 2019 |
| DAVID BOWE AND JEROME COMBS | : | |
| AND THOMAS J. PUHL | : | |

Appeal from the Order Entered May 16, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2017-19677

| | | |
|---|---|---|
| GLEBA INC., | : | IN THE SUPERIOR COURT |
| | : | OF |
| Appellant | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRI-STATE AUTO AUCTION INC., | : | |
| THOMAS PUHL, DAVID BOWE  AND | : | No. 3200 EDA 2019 |
| JEROME COMBS | : | |

Appeal from the Order Entered May 10, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2017-19677

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED:  FEBRUARY 19, 2021**

Gleba, Inc. ("Gleba") appeals at docket No. 2108 EDA 2019 from the

May 16, 2019 order granting the cross-motion for summary judgment of Tri-

_____

[*] Former Justice specially assigned to the Superior Court.

State Auto Auction, Inc. ("Tri-State"), David Bowe, and Jerome Combs (collectively "Tri-State Appellees"), and dismissing its amended complaint in its entirety with prejudice.[1] Gleba further appeals at docket No. 3200 EDA 2019 from the May 10, 2019 order granting summary judgment in favor of Thomas J. Puhl ("Appellee Puhl") and dismissing its amended complaint in its entirety with prejudice.[2] Gleba challenges the trial court's dismissal of its lawsuit on the grounds of *res judicata*. After careful review of the record, we affirm, but remand for the correction of a clerical error.[3]

This appeal arises from a dispute over a non-residential lease entered into between Tri-State, as lessor, and Gleba, as lessee. Gleba initiated this action on August 9, 2017, with the filing of a complaint against Tri-State and Appellee Puhl, as an interested party, in the Court of Common Pleas of

---

[1] By order dated May 10, 2019, the trial court granted Tri-State Appellees' cross-motion for summary judgment and dismissed Gleba's amended complaint with prejudice. Upon consideration of Gleba's application for a determination of finality pursuant to Pa.R.A.P. 341(c), the court amended the May 10, 2019 summary judgment order as entered, by order dated May 16, 2019, which restated that Gleba's amended complaint is dismissed in its entirety, with prejudice, and declared the order final to facilitate an immediate appeal pursuant to Pa.R.A.P. 341(c).

[2] The trial court initially denied as moot Gleba's Rule 341(c) application for finality of the order in favor of Appellee Puhl; however, by *per curiam* order dated November 21, 2019, this Court granted Gleba's petition for review, pursuant to Pa.R.A.P. 702(b), and directed this matter to proceed before this Court as an appeal from the May 10, 2019 order.

[3] Since these consecutively listed appeals stem from a single civil action in the court below and raise identical issues, we consolidate the above-captioned cases *sua sponte* for ease of disposition.

Montgomery County. On March 30, 2016, however, prior to the commencement of the instant matter, Tri-State filed a complaint against Gleba,[4] seeking a declaratory judgment pertaining to the same lease ("Declaratory Judgment Action").[5]

The trial court's dismissal of Gleba's amended complaint in the instant action was based on the following factual findings made in the Declaratory Judgment Action, which are incorporated in its Pa.R.A.P. 1925(a) opinion:[6]

1. [Tri-State] is a Pennsylvania corporation with its registered office in Conshohocken, Montgomery County.

2. [Gleba] is a Pennsylvania corporation with its registered office in West Conshohocken, Montgomery County.

3. Tri-State is the title owner of an approximately 5.4 acre parcel of improved land located at 538 Swedeland Road ("538 Swedeland"), Upper Merion Township, Montgomery County ("the Premises").

4. COBOCO, LP ("COBOCO") is a limited partnership formed with Tri-State as the general partner and the two individual principals of Tri-State as the limited partners.

---

[4] ***See Tri-State Auto Auction, Inc. v. Gleba, Inc.***, No. 2016-06133 (Pa. Ct. Com. Pl., Montgomery County filed March 3, 2016), *appeal quashed*, 2679 EDA 2018 (Pa. Super. Sept. 25, 2018), *appeal docketed* 1846 EDA 2020 (Oct. 15, 2020).

[5] Tri-State also filed confessions of judgment against Gleba on June 24, 2016 and December 9, 2016, at docket Nos. 2016-13334 and 2016-29319, respectively, seeking possession of the leased premises and recovery of unpaid rent and taxes. On May 2, 2017, the trial court issued an order consolidating Tri-State's actions at docket No. 2016-06133.

[6] ***See*** Trial Court Opinion ("TCO"), 6/4/20, at 2-9.

5. COBOCO owns a contiguous, approximately five (5) acre parcel of improved land located at 504 Swedeland Road ("504 Swedeland"), Upper Merion Township, Montgomery County.

6. The COBOCO property at 504 Swedeland has no street frontage and access is limited to a small driveway that is an easement across the Premises at 538 Swedeland.

7. Tri-State owned and operated an automobile auction company and used the entire ten (10) acres of the two (2) parcels to operate the business. Once Tri-State stopped their automobile auction business in 2008, [its] goal was to eventually sell the parcels.

8. In December 2010, Tri-State, as lessor, leased the Premises at 538 Swedeland to Gleba, as lessee, pursuant to a lease with a rider and a subsequent addendum ("the Lease"). David [] Bowe, President, and Jerome [] Combs, Secretary, signed the Lease on behalf of Tri-State[,] and Walter C. Gleba, President and Secretary, signed on behalf of Gleba.

9. Counsel for Gleba, including John D. Maida, Esquire ("Attorney Maida"), drafted the Lease without speaking to [c]ounsel for Tri-State. Specifically, there was no direct communication [between] Mitchell Russell, Esquire[,] on behalf of Tri-State and [Attorney] Maida, [c]ounsel for Gleba.

10. Counsel for Tri-State, [Attorney] Russell, … provided comments regarding the draft [proposed] to Tri-State, but did not participate in the negotiation of the Lease.

11. The Lease is a fully integrated instrument setting forth all of the provisions thereof.

12. Paragraph (k) of the Rider provides as follows:

The Lessee shall have the right to extend the term of this Lease, for two [(2)] additional terms of two (2) additional years each by notifying the Lessor of the Lessee's election to exercise such right at least three (3) months prior to the expiration of the then current term of this Lease provided that at the time of the exercise of such right and at the time of such renewal, the Lessee shall not be in default in the performance of any of the terms, covenants or conditions herein contained, and that this Lease shall not have been terminated prior to the commencement of such extended

- 4 -

term. Lessee's minimum annual rent during the option terms shall be increased to $1,800.00 per month during the first option lease term and to $1,900.00 per month during the second option lease term. Notwithstanding the foregoing and with respect to the entire term of this Lease (initial and renewal), Lessor shall have the right to terminate this Lease at any time during any term upon ninety (90) days prior written notice of termination to Lessee and payment to Lessee of a termination fee of $100,000.00.

13. Paragraph (p) of the Rider provides:

Lessor hereby grants Lessee a right of first refusal[7] to purchase the leased [P]remises for the purchase price to be determined as herein set forth; such right of first refusal shall exist upon the occurrence of either of the following events only:

1. Any attempted transfer of Premises, whether voluntary or involuntary, by operation of law or otherwise, including but not limited to, all executions or legal processes attaching Premises and all processes affecting the interest of Lessor therein; or

2. The receipt by Lessor of a bona fide offer from a third party legally entitled to purchase[] Premises, which offer Lessor desires to accept.

Immediately upon the occurrence of any of the events herein before set forth, the Lessor shall send written notice by certified mail to the Lessee of such fact. If Lessor desires to sell Premises as a result of a bona fide offer, such written notice shall contain the name, address and qualifications of the person who made the offer and all of the terms of such offer. During the period that shall begin with the occurrence of such event and shall end thirty (30) days after such written notice is given, the Lessee shall have the right to exercise its option to purchase the Premises upon any terms and conditions that are more beneficial to the Lessor than those set forth in the offer to purchase so presented. If Lessee does not exercise its option to purchase Premises or waives such right in writing, this option shall terminate and

---

[7] The right of first refusal is sometimes referred to herein as the "right of first purchase."

be of no further force and effect. If any event occurs pursuant to which Lessee may exercise its option to purchase Premises and it fails to so exercise its option to purchase Premises, within the allocated time, said option to purchase Premises shall terminate; provided, however, in the event a proposed transfer or sale is not consummated in accordance with the price and on the terms set forth in the notice sent to Lessee as required hereby, the Lessor shall not be entitled to sell Premises unless re-offered to Lessee under the terms of this Agreement at any different price and/or on any different terms. Moreover, if the Premises is not sold pursuant to the notice within six (6) months after the notice is given, the Premises may not be sold unless re-offered pursuant to this Agreement.

Any notice required to be given hereunder or any exercise of an option granted herein must be made in writing, sent by either registered or certified mail, return receipt requested and addressed as required by the Lease.

14. Gleba paid Tri-State a security deposit in the amount of Two Thousand Dollars ($2,000.00) upon execution of the Lease.

15. Even prior to Gleba['s] expressing an interest in leasing 538 Swedeland[,] and at all times material hereto, there had been a "For Sale" sign located on the Premises and the COBOCO parcel (together "the Sale Properties")[,] as they were jointly offered for sale.

16. At one time, the Sale Properties were offered for sale for the sum of $3,750,000.00.

17. Tri-State never offered the Premises for sale as a parcel separate and apart from the Sale Properties.

…

27. Following an exchange of correspondence [between Attorney Russell and Attorney Maida, concerning an agreement for the purchase of the Sale Properties entered into with a third party on April 24, 2014], Tri-State understood Gleba's position to be that a properly constructed offer that would give rise to Gleba's obligation to exercise or waive the right of first refusal would need to be limited to the leased Premises alone[,] and that if Tri-State attempted to sell the leased Premises in any manner outside of that understanding, Gleba would take legal action.

28. The April 24, 2014 purchase agreement terminated pursuant to its "due diligence" provisions.

…

30. Tri-State ceased marketing of the Sale Properties at that time.

31. On advice of counsel, the principals determined that it was best to wait until the Lease naturally expired in April of 2016 to pursue a sale of the Sale Properties.

32. Although [c]ounsel for Tri-State received two (2) nonbinding letters of intent, dated October 2, 2015[,] and November 27, 2015, respectively, from a broker[2] on behalf of [Appellee] Puhl and Kristen F. Puhl [(collectively "the Puhls")], [c]ounsel determined that they never amounted to an offer and instructed the broker to inform the Puhls that the Sale Properties were off the market. Attorney Russell did not communicate the existence of these letters or the potential interest in the Sale Properties to the principals of Tri-State at this time.

   [2] The broker, Paul French, did not have a listing agreement on the Sale Premises at the time. Mr. French subsequently entered into a commission agreement for the Sale Properties after February 2, 2017.

33. In early 2016, Gleba exercised its option to renew the Lease.

34. As a result, Tri-State made the economic decision to pay Gleba $100,000.00 to terminate the Lease early in order to market the Sale Properties as a combined parcel.

35. On March 9, 2016, [c]ounsel for Tri-State, Michael Clement, Esquire ("Attorney Clement"), sent a letter on behalf of [Tri-State] dated March 8, 2016 (the "[March 8, 2016] Letter")[,] by certified mail, return receipt requested, to Walter C. Gleba as President of Gleba…. Counsel enclosed a check in the amount of $100,000.00 with the March 8, 2016 [L]etter.

36. The March 8, 2016 Letter and $100,000.00 check to Gleba constituted Tri-State's notice of termination of the Lease pursuant to [paragraph] (k) of the Rider. [Tri-State] also sought "written adequate assurance" within ten (10) days that

Gleba would vacate the leased Premises within ninety (90) days.

37. The term "adequate assurance" is not defined in the Lease.

38. Attorney Russell explained that the reasons in support of the decision to request adequate assurance from Gleba were two-fold. The first reason being the very large $100,000.00 payment made up front in light of a $1,800.00[-]a[-]month lease[,] … before Gleba was required to vacate the [P]remises. The second reason being the history of communications with Attorney Maida regarding the right of first refusal.

39. Gleba received the [March 8, 2016 L]etter on March 13, 2016.

40. Attorney Clement's office also mailed a copy of the [March 8, 2016] Letter to [Gleba's c]ounsel, Attorney Maida, on March 8, 2016.

41. Counsel[] for Tri-State sent two (2) emails to [c]ounsel for Gleba seeking a response, on March 21, 2016, and March 22, 2016, respectively. Because Gleba failed to respond with an assurance, Tri-State filed [its Declaratory Judgment Action] on March 30, 2016.

42. Gleba filed an Answer with New Matter to the Complaint on April 22, 2016, and Tri-State filed an Answer to the New Matter on May 5, 2016.

43. In Gleba's Answer with New Matter, [it] avers "no controversy exists as to the provisions of an integrated Lease" and "[b]y the terms of the Lease, Gleba's right of first refusal is binding upon [Tri-State] until the actual termination of the Lease."

44. On May 13, 2016, [Tri-State's c]ounsel sent a letter to [Gleba's c]ounsel [("May 13 Letter")], which provided a modification of the notice and granted Gleba until June 13, 2016, to vacate the Premises.

45. The May 13, 2016 [L]etter also informed Gleba that Tri-State would declare Gleba in breach of the Lease and seek monetary and exemplary damages[,] including recovery of the $100,000.00 it had paid to Gleba[,] should Gleba not vacate on or before June 13, 2016.

46. Gleba paid, and Tri-State accepted, all base rent due up to and including April 30, 2016.

47. On June 9, 2016, Gleba deposited the $100,000.00 check enclosed with the March 8, 2016 Letter from Attorney Clement.

48. On June 13, 2016, Attorney Maida, on behalf of Gleba[,] wrote to Attorney Clement, as counsel for Tri-State, to state, *inter alia*, that Gleba rejected the March 8, 2016 [L]etter as being of no force and/or effect; the Lease, as an integrated instrument, speaks for itself; Attorney Clement's May 13, 2016 [L]etter was accepted as adequate notice to exercise the option to terminate the Lease ninety (90) days hence and Gleba has accepted payment of $100,000.00 in consideration of the Lease termination on August 11, 2016.

49. Gleba did not vacate the Premises by June 13, 2016, nor did Gleba vacate the Premises by August 11, 2016, as represented in Attorney Maida's June 13, 2016 letter.

50. Tri-State obtained possession of the [Premises] through a writ of possession served on July 12, 2016, with possession taken on October 13, 2016.[8]  However, Gleba did not vacate the Premises until October 28, 2016.

51. Gleba tendered payment of base rent to Tri-State from May 2016 through September 2016.

52. Tri-State did not cash any of the checks Gleba tendered to Tri-State for base rent from May 2016 to September 2016.

53. By letter from Attorney Maida dated September 20, 2016, Gleba informed Tri-State that it was stopping payment on the rent checks previously tendered.[9]

…

---

[8] ***See Tri-State Auto Auction, Inc. v. Gleba, Inc.***, No. 2016-13334 (Pa. Ct. Com. Pl., Montgomery County filed June 24, 2016), *consolidated at **Tri-State Auto Auction, Inc.***, No. 2016-06133.

[9] Tri-State confessed judgment against Gleba on December 9, 2016, in the amount of $19,801.70, for unpaid rent and taxes, plus fees and costs.  ***See Tri-State Auto Auction, Inc. v. Gleba, Inc.***, No. 2016-29319 (Pa. Ct. Com. Pl., Montgomery County filed Dec. 9, 2016), *consolidated at **Tri-State Auto Auction, Inc.***, No. 2016-06133.

55. Tri-State and COBOCO entered into a purchase agreement for the Sale Properties with the Puhls dated February 2, 2017, for the purchase price of $3,900,000.00.

56. Gleba has never made an offer for any portion of the Sale Properties, large or small….

***Tri-State Auto Action, Inc.***, No. 2016-06133, unpublished memorandum at 1-12 (Pa. Ct. Com. Pl. filed Aug. 14, 2018) ("Amended Decision") (citations to record omitted).

A two-day bench trial was held regarding the Declaratory Judgment Action on August 14, 2017, and April 19, 2018, during which,

> [t]he [trial judge] found Attorney Russell's testimony on direct and cross[-]examination highly credible. After Tri-State rested its case, [c]ounsel moved for a partial directed verdict on the termination of the [L]ease being proper, including the termination of the right of first refusal. Counsel for Gleba did not object procedurally to the oral motion and instead moved to dismiss the case or direct the addition of the potential buyer, Thomas Puhl[,] as an indispensable party. The court reiterated what had been discussed in conference earlier in the day, that after the testimony was transcribed, the court would issue an order for [c]ounsel to file their submissions.
>
> Counsel filed briefs on their respective motions, and the [c]ourt entered its [d]ecision on January 24, 2018. Gleba filed post-trial motions on February 2, 2018, arguing that it had not had the opportunity to present its witnesses. Although the court disagreed with Gleba's position as presented, the [court] entered an order on March 2, 2018, opening the record in the interest of justice to proceed with Gleba's witnesses.[4]
>
> _____
> [4] Also on March 2, 2018, the court entered its order denying Gleba's motion in *limine* alleging the failure to join an indispensable party and oral motion to dismiss.
>
> On April 19, 2018, the undersigned presided over a second day of trial. Attorney Maida started his argument in support of a motion for nonsuit by stating that at the first day of trial, [as well as pleadings filed since then and the stipulated facts,] the case went beyond what he had filed in his pretrial statement….

- 10 -

Referring to the document entitled "Joint Stipulation of Facts—Declaratory Judgment Action Only[,"] [c]ounsel then went on to state[:] "But the stipulated facts were predicated on the consolidation of all the cases." He continued[,] "it was stipulated as to all the cases, these are the facts which—because it was a consolidated matter."

In response, Attorney Clement argued[:] "[W]e're here today because there is a dispute between the parties related to a [L]ease and a right of first refusal contained within the [L]ease. And, as Mr. Maida indicated, this is a fully integrated document. My client believes the [L]ease was properly terminated. They came to this [c]ourt to have the [c]ourt confirm for them that the [L]ease was properly terminated."

The [c]ourt denied Gleba's motion for compulsory nonsuit. Gleba then presented witnesses[:] Jerome Combs and David Bowe of Tri-State, broker Paul French[,] and Attorney Russell. While the court found all of these witnesses credible, the court specifically found … Mr. French's testimony highly credible.

TCO at 11-12 (quoting ***Tri-State Auto Auction, Inc.***, 2679 EDA 2018, unpublished memorandum (Pa. Super. filed Nov. 19, 2019) (some internal brackets omitted)).

After considering all of the evidence presented at trial, the lower court issued its Amended Decision on August 14, 2018, which contained the following determinations:

18. In this action, [Tri-State] seeks a declaration that 1) Tri-State properly terminated the Lease; 2) Gleba's right of first refusal set forth in the Lease terminated contemporaneously with the Lease; 3) a repudiation of the Lease by Gleba occurred[;] and 4) an anticipatory breach of the Lease by Gleba occurred.

19. This court opines that the Lease is unambiguous.

20. Both [p]arties concede that the Lease contains an integration clause that is binding.

21. A fair reading of the complaint in combination with the evidence admitted at trial results in the court['s] determining that

[Tri-State] properly terminated the Lease pursuant to paragraph (k) of the Lease [R]ider[,] as of Monday, June 13, 2016, by mailing the written March 8, 2016 Letter with the enclosed check in the amount of $100,000.00 by certified mail on March 9, 2016, and as admittedly received by [Gleba] on March 13, 2016.[10]

22.    The right of first refusal contained within paragraph (p) of the Lease [R]ider also terminated as part of the Lease on or before June 13, 2016.

23.    The court concludes that Gleba's actions and failure to provide what [Tri-State] terms "adequate assurance[,"] while no doubt frustrating, did not constitute an "absolute and unequivocal refusal to perform[."]

24.    Therefore, the court finds for Gleba and against [Tri-State] on the claims of repudiation and anticipatory breach.

25.    The court also concludes that Gleba did not vacate the Premises pursuant to the terms of the Lease, which failure constituted a breach of that Lease.  The court will issue a separate order scheduling argument and a hearing, if necessary, to hear Gleba's petition to open the judgment and to assess damages including, *inter alia*, Gleba's failure to pay rent and taxes, together with costs, interest[,] and an attorney's commission, in a subsequent proceeding under docket [No.] 2016-29319, now consolidated [at No. 2016-06133].[11]

26.    [Tri-State's c]omplaint in [c]onfession for [j]udgment for possession filed under docket [No.] 2016-13334, now consolidated [at No. 2016-06133], is moot.

---

[10] "The [p]arties had raised [these] issues at pretrial conferences, in their pretrial statements, at trial[,] and in their post-trial submissions."  TCO at 13.

[11] Paragraph 25 of the Amended Decision was amended by order dated September 1, 2020, to omit the first sentence regarding the trial court's determination that Gleba's failure to vacate the Premises constituted a breach of the Lease.  *See Tri-State Auto Auction, Inc.*, No. 2016-06133 (order granting in part and denying in part motion for post-trial relief).

Amended Decision at 16-17. Gleba filed a timely post-trial motion on August 21, 2018.[12] Tri-State filed its response on September 10, 2018. Before the court could issue an order scheduling argument on Gleba's motion, [c]ounsel for Gleba filed a notice of appeal on September 10, 2018.[13] The appeal was subsequently quashed.

On August 9, 2017, while the Declaratory Judgment Action was still pending and awaiting trial, Gleba initiated the present action with the filing of its complaint against Tri-State and Appellee Puhl. Gleba amended its complaint on October 23, 2017, naming David Bowe and Jerome Combs as additional defendants. In its amended complaint, Gleba averred that Tri-State never offered it the right to first purchase of the Premises upon receiving the Puhls' November 2, 2015 letter of intent, as required under the terms of the Lease. **See** Amended Complaint, 10/23/17, at 2-3. Gleba further alleged that during the period of October 2015 through May of 2016, Tri-State and its counsel purposefully engaged in a course of conduct that enabled Tri-State to deny knowledge of the Puhls' offer to purchase the Premises. **Id.** at 4. Gleba contended that it executed the Lease in reliance on Tri-State's representations that it would offer Gleba the right of first refusal upon the receipt of any bona fide offer that it wished to accept, and that this agreement would extend

---

[12] The trial court noted that "Gleba did not challenge [its] decision to deny Gleba's motion in *limine* alleging the failure to join Mr. Puhl as an indispensable party." TCO at 12 n.5.

[13] **See Tri-State Auto Auction, Inc. v. Gleba, Inc.**, 2679 EDA 2018 (Pa. Super. Sept. 25, 2018), *quashed*.

- 13 -

throughout the entire duration of the Lease, including any periods of renewal. *Id.* at 5. Gleba averred that it only learned on July 12, 2016, that Tri-State had effectively denied it the right of first refusal by jointly listing 504 Swedeland and the Premises for sale. *Id.* at 6.

On January 26, 2018, Tri-State Appellees filed an answer, new matter, and counterclaim. Appellee Puhl separately filed an answer and new matter on the same date. Each of the appellees raised the affirmative defenses of prior pending action or *lis pendens*, collateral estoppel, *res judicata,* and gist of the action, *inter alia,* in their respective new matters, based on the assertion that Gleba is attempting to raise the same claims in the instant matter that it has already raised in the Declaratory Judgment Action. On February 15, 2018, Gleba filed replies to the new matters.

The trial court further provided:

> On August 8, 2020, Gleba filed a partial motion for summary judgment[,] arguing that [it] was entitled to judgment as a matter of law based on the purported expert testimony of Attorney Russell that Gleba's right of first refusal would survive a termination by Tri-State and survive for the entire stated term of the [L]ease. (Gleba's Memorandum of Law in Support of its Motion for Summary Judgment, … 8/8/18, at 2).[7] Gleba's motion relied extensively on the testimony and other evidence presented in the [Declaratory Judgment Action]. [Tri-State Appellees] filed an answer to [Gleba's] motion as well as a cross[-]motion for summary judgment on September 7, 2018. Appellee Puhl followed suit on September 10, 2018. The [trial court] heard oral argument by [c]ounsel on the three motions on November 8, 2018.
>
> > [7] Gleba's memorandum of law misstates the evidence of record. For example, contrary to Gleba's assertions, Attorney Russell never "revised the [L]ease[,"] nor did

Gleba have a "right of first purchase[."] Moreover, at trial in the 2016 matter, Attorney Russell specifically testified as follows:

> The right of first refusal is a clause within a lease. When that lease terminated, the right of first refusal terminated. There was no separate filed instrument of right of first refusal[,] which you sometimes see in a commercial transaction that might have terms outside of the lease. When the lease goes away, the right of first refusal goes away. It would be preposterous to think that the right of first refusal extends out beyond the term of the lease.

To imply that Attorney Russell opined that the right of first refusal survived the termination of the [L]ease in 2016 is disingenuous at best.

On May 10, 2019, this court entered three companion orders denying [Gleba's] motion for partial summary judgment; denying [Tri-State] Appellees' motions for summary judgment on their counterclaims, but granting [Tri-State Appellees'] cross[-]motion for summary judgment, and granting Appellee Puhl's cross[-]motion for summary judgment[,] dismissing Gleba's amended complaint in its entirety, with prejudice….[8]

[8] Although the [court] denied [Tri-State] Appellees' counterclaims as also having been previously litigated, in hindsight, the court should also have dismissed the counterclaims as was its intention.[14]

---

[14] We direct the trial court to modify its order denying summary judgment on Tri-State Appellees' counterclaims to reflect a dismissal of the counterclaims, as the court intended. **See Commonwealth v. Thompson**, 106 A.3d 742, 766 (Pa. Super. 2014) (recognizing the trial court's inherent, common-law authority to correct clear clerical errors in its orders, even after the 30-day time limitation for the modification of order expires) (citing 42 Pa.C.S. § 5505)). **See also Commonwealth v. Holmes**, 933 A.2d 57, 66 (Pa. 2007) (noting that the court's inherent power to correct obvious errors is not limited to those errors evident on the face of the order, but extends to the trial court's correction of a mistake that was only made apparent by viewing the record).

Gleba filed two notices of appeal, one on May 17, 2019, [from] the order in favor of [Tri-State Appellees], and one on June 28, 2019, regarding the order in favor of Appellee Puhl. The Superior Court quashed the notice regarding the order in favor of Appellee Puhl[,] but later reinstated the appeal under docket number 3200 EDA 2019.

TCO at 15-17 (citations to record and unnecessary capitalization omitted).

Following its timely notices of appeal, Gleba filed timely, court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.[15] As the issues raised in both statements were essentially the same, the trial court noted that it addressed the statements jointly in its Rule 1925(a) opinion. **See** TCO at 17 n.9.

Gleba now presents the following issues for our review:

1. Did the lower court commit reversible error by dismissing the action upon the doctrine of *res judicata* when[:] (1) the identity of the thing sued upon or for were [*sic*] not the same; (2) the identity of the causes of action is totally different, the former being a declaratory judgment action[4] and the latter for

---

[15] We note with disapproval Gleba's failure to conform its concise statements to the dictates of Rule 1925(b). Rule 1925(b)(4) provides that the statement "shall *concisely* identify each error that the appellant intends to challenge" and "should not be redundant or provide lengthy explanations as to any error." Pa.R.A.P. 1925(b)(4)(ii), (iv) (emphasis added). Gleba's Rule 1925(b) statements are anything but concise, consisting of 40 paragraphs and 46 paragraphs, respectively, with subparts and footnotes. The statements are lengthy, rambling, and contain unnecessary procedural history, as well as the development of legal argument and citations to case law, making it difficult to ascertain the basis for Gleba's appeal. Nevertheless, we do not deem the issues waived, as Gleba's summary of the questions it intended to present on appeal in paragraph 40 of each of its Rule 1925(b) statements aided in the trial court's addressing of the appropriate issues. **See Karn v. Quick & Reilly Inc.**, 912 A.2d 329, 335 (Pa. Super. 2006) (stating that the failure to comply with Rule 1925(b)(4) may result in waiver of all issues, particularly where the trial court is impeded in its preparation of a legal analysis of the issues) (citing Pa.R.A.P. 1925(b)(4)(vii)).

- 16 -

alternatively specific performance and/or tort and assumpsit damages; (3) the identity of the persons or parties to the actions are [*sic*] different as herein three of the four defendants were not party [*sic*] to the prior action; and (4) the identity of the quality or capacity of one party being sued so differed herein because that party, *i.e.*[,] [Appellee] Puhl, was not joined in the former action, whereby [his] absence in [the Declaratory Judgment A]ction rendered that case void for lack of subject matter jurisdiction?

> [4] Although in [its o]pinion, the lower court for the first time is suggesting that the former action sought more that [*sic*] declaratory judgment on two very specific controversies, which it did not. The court entered a verdict in Gleba's favor on both controversies.

2. Did the lower court commit reversible error by deciding that the ultimate and controlling issues presented in the instant action had theretofore been decided in the [D]eclaratory [J]udgment [A]ction, when neither of the two following and only "controversies" set forth as counts 1 and 2 in the [Declaratory Judgment A]ction were presented in the instant action on appeal:

Count 1: "An actual controversy exists among the parties since Gleba has refused to accept Tri-State's tender of the $100,000.00 termination fee under subparagraph (k) of the Rider to [the] Lease, and since Gleba has *refused to provide assurance* that it will comply with Tri-State's Notice of Termination and vacate the Premises by June 7, 2016, thereby repudiating the Lease contract."

And:

Count 2: "Gleba's failure and/or refusal to accept Tri[]State's termination fee in the amount of $100,000.00 pursuant to subparagraph (k) of the [R]ider, and failure and/or refusal to provide assurance that it will comply with Tri-State's Notice of Termination by vacating on or before June 7, 2016, are *a repudiation and breach of material terms of the Lease* entered into by Gleba and Tri[]State."

3. Did the lower court commit reversible error by deciding that Gleba had the opportunity to appear and assert its rights in the [Declaratory Judgment A]ction from which a final judgment on the merits has not been entered, when the issues in the

[Declaratory Judgment A]ction are[:] (1) neither identical to or presented in the action on appeal; (2) the verdict on the controversies rendered in the [Declaratory Judgment A]ction were in Gleba's favor; (3) three of the four parties in the instant action for whom collateral estoppel is to benefit[] were not parties to the [Declaratory Judgment A]ction nor in privy with Tri[-]State;[6] and[] (4) Gleba, the party against whom collateral estoppel is to be imposed a) was upon order of the lower court precluded from a full and fair opportunity to litigate the facts Judge Rogers[] seeks to collaterally estopped [*sic*] against Gleba'[s] interest; b) the issues raised in the instant action had yet to occur when the [Declaratory Judgment A]ction[7] commenced; and c) the findings of the lower court on the merits in the [Declaratory Judgment A]ction were in Gleba's favor?

[6] Of note is that the lower court determined [Appellee] Puhl to be indispensable as a party to the [Declaratory Judgment A]ction, but in the action on appeal by bestowing benefits to [Appellee] Puhl arising [from] the [Declaratory Judgment A]ction admits the court lacked subject matter jurisdiction in the [Declaratory Judgment A]ction.

[7] The complaint in the [Declaratory Judgment A]ction was never amended to include any issues that were first discovered after the proceeding came to issue by all parties or actually occurred post[-]filing thereof.

4. By [the trial court's granting of] separate summary judgment for [Appellee] Puhl[,] did the lower court commit reversible error by so ruling because [Appellee] Puhl's judgment established that [his] absence in the [Declaratory Judgment A]ction (by implication of the summary judgment[8]), proved that the lower court lacked subject matter jurisdiction in his absence, resulting in [the court's] inability to enter any judgment, summary or otherwise, predicated upon the amended decisions of the [Declaratory Judgment A]ction?

[8] And was incorporated into and [was] the basis of the orders entered in this appeal and also entered in … 3200 EDA 2019.

Gleba's Brief at xiv–xvii (unnecessary capitalization omitted; emphasis in original; some footnotes omitted).

Before delving into the merits of these issues, we again admonish Gleba for its lack of compliance with our Rules of Appellate Procedure. Although it sets forth four questions for our review, the argument section of its brief contains only one section, in violation of Rule 2119(a). **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein…."). Additionally, Gleba's statement of the questions, which spans four pages, fails to "state concisely the issues to be resolved," and contains "unnecessary detail[,]" in violation of Rule 2116(a). **See** Pa.R.A.P. 2116(a).

Moreover, Gleba's prolix statement of questions makes it challenging to discern the issues being raised. After careful review of its brief, however, we deduce the following issues posed by Gleba for our review: (1) whether Gleba's amended complaint was properly dismissed under the doctrine of *res judicata*; (2) whether the controlling issues presented here have already been decided in the Declaratory Judgment Action; (3) whether Gleba had a full and fair opportunity to litigate the instant controlling issues in the Declaratory Judgment Action; and (4) whether the fact that Appellee Puhl was not a party to the Declaratory Judgment Action renders the Amended Decision void for lack of subject matter jurisdiction. Despite Gleba's clear violations of the Rules, we consider the questions presented, as we do not deem the violations

an impediment to our ability to undertake a meaningful review of the issues at hand. *See Long v. Ostroff*, 854 A.2d 524, 527 (Pa. Super. 2004) (citations omitted). We address Gleba's first three issues together herein, as each of these claims relates to whether *res judicata* was properly applied in the instant matter.

Applying the doctrine of *res judicata* presents an issue of law for which our standard of review is de novo and our scope of review is plenary. *Gregg v. Ameriprise Financial, Inc.*, 195 A.3d 930, 935 (Pa. Super. 2018).

> "[T]he doctrine of *res judicata* holds that a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action." *Dempsey v. Cessna Aircraft Co.*, … 653 A.2d 679, 680-81 ([Pa. Super.] 1995) (*en banc*). "A judgment is deemed final for purposes of *res judicata* or collateral estoppel unless or until it is reversed on appeal." *Shaffer v. Smith*, … 673 A.2d 872, 874 ([Pa.] 1996) (citation omitted).

*Khalil v. Cole*, 240 A.3d 996, 1000 (Pa. Super. 2020). "The purpose of the doctrine is to minimize the judicial energy devoted to individual cases, establish certainty and respect for court judgments, and protect the party relying on the prior adjudication from vexatious litigation." *Dempsey*, 653 A.2d at 681 (internal quotation marks and citations omitted).

This Court recently explained:

> The doctrine of *res judicata* subsumes the doctrine of issue preclusion, also known as collateral estoppel.[16] *Chada v.*

---

[16] Collateral estoppel applies where these four elements are present:

> *Chada*, 756 A.2d 39, 42 (Pa. Super. 2000). Thus, *res judicata* in Pennsylvania encompasses issue preclusion and claim preclusion. *Res judicata* "bars the relitigation of issues that either were raised or *could have been raised* in the prior proceeding." *McArdle v. Tronetti*, … 627 A.2d 1219, 1222 ([Pa. Super.] 1993) (citations omitted; emphasis added). This has long been the case." In our opinion, the doctrine of *res judicata* … covers all matters which *could have been raised* or presented in the former action as well as those actually litigated." *Miller v. Dierken*, … 41 A.2d 438, 439 ([Pa. Super.] 1945) (citations omitted; emphasis added).
>
> For *res judicata* to apply, there must be four common elements between the two actions: "(1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties." *Dempsey*, 653[] A.2d at 681. When examining these elements, "a court may consider whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages." *Id.* (citation omitted). "*Res judicata* may bar a second action based upon the same transaction even if additional grounds for relief are presented." *Id.* at 682.

*Khalil*, 240 A.3d at 1001-02.

First, Gleba argues that *res judicata* cannot be applied to the instant matter because a "final judgment has not been entered" in the Declaratory Judgment Action. Gleba's Brief at 4 (citing *Cellucci v. Laurel Homewowners Association*, 142 A.3d 1032, 1049 (Pa. Cmwlth. 2016)

---

(1) An issue decided in a prior action is identical to the one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Columbia Medical Group, Inc. v. Herring & Roll, P.C.*, 829 A.2d 1184, 1190 (Pa. Super. 2003).

(providing that where a final judgment exists, technical *res judicata* precludes a future lawsuit on the same cause of action)). Contrary to its assertion, however, a final decision was entered in the Declaratory Judgment Action on August 14, 2018. *See* Amended Decision at 16-17. Pursuant to 42 Pa.C.S. § 7532, declarations made by a court in a declaratory judgment action "shall have the force and effect of a final judgment or decree." Moreover, a judgment remains final for the purpose of *res judicata* "unless or until it is reversed on appeal." *Shaffer*, 673 A.2d at 874. Despite Gleba's insinuation that its pending motion for reconsideration in the Declaratory Judgment Action would materially jeopardize the "erroneous declarations" made by the trial court, as of this writing, the Amended Decision has not been reversed.[17]

Instantly, the record clearly supports the trial court's conclusion that the present action is barred by *res judicata*. There is no question that the claims raised in both Gleba's amended complaint and Tri-State's Declaratory Judgment Action arise from the same Lease. The crux of the claims in both

---

[17] At the time Gleba filed its brief, it had a pending motion for reconsideration regarding the Amended Decision issued in the Declaratory Judgment Action. On September 1, 2020, the trial court granted Gleba's motion *only to the extent* that it amended Paragraph 25 of the Amended Claim to omit the determination that Gleba's failure to vacate the Premises constituted a breach of the Lease. All remaining claims in Gleba's motion for post-trial relief were denied. *See* discussion and order cited *supra* n.12. To the extent that Gleba continues to assert that the trial court erred regarding its declarations in the Amended Decision, any such claims should be raised on direct appeal in the Declaratory Judgment Action. In fact, Gleba did file a notice of appeal on September 10, 2020, from the denial of post-trial relief, which currently remains pending before this Court at 1846 EDA 2020.

matters is the termination of the Lease and the right of first refusal contained within the terms of the Lease.[18] Moreover, the facts averred here in the amended complaint are the same facts presented in the Declaratory Judgment Action. In fact, Gleba even admits in its own words that "[t]he facts and laws addressed in the instant appeals did *not* arise in the underlying action…. Rather, they are found in the Amended Decision[] entered in [the Declaratory Judgment Action]." Gleba's Brief at 1 (emphasis added).

Next, the trial court concluded that, whether applying *res judicata* or collateral estoppel, "the 'same parties' element is satisfied[,] because David [] Bowe, President, and Jerome [] Combs, Secretary, signed the Lease on behalf of Tri-State, just as Walter C. Gleba, President and Secretary, signed on behalf of Gleba. Hence[,] they are the same parties or in privity." TCO at 41. It is well-established that the parties are considered to meet the identical

---

[18] Gleba attempts to argue that the trial court "could not and did not" make a determination in the Declaratory Judgment Action regarding whether the Lease terminated, as this issue was not before the court. Gleba's Brief at 7. Its assertion relies, however, on its misleading claim that Tri-State sought to resolve *only two* controversies in the Declaratory Judgment Action—whether Gleba committed repudiation or anticipatory breach of the Lease—and "nothing more." *Id.* at 5. Contrarily, the trial court expressly found that in addition to its claims of repudiation and anticipatory breach, Tri-State also sought declarations that it "properly terminated the Lease," and that "Gleba's right of first refusal set forth in the Lease terminated contemporaneously with the Lease[.]" *See* Amended Decision at 16 ¶ 18. After a two-day trial on the matter, the trial court found, *inter alia*, that the Lease was properly terminated as of June 13, 2016, and that the right of first refusal terminated as part of the Lease on the same date. *See id.* at 16-17 ¶¶ 21, 22.

parties requirement of res judicata "if the party against whom the plea is asserted was a party *or in privity with a party* to the prior adjudication." **Khalil**, 240 A.3d at 1002-03 (quoting **Safeguard Mut. Ins. Co. v. Williams**, 345 A.2d 664, 668 (Pa. 1975) (internal quotation marks omitted; emphasis added)). Generally, parties are in privity if one is vicariously responsible for the conduct of another, such as principal and agent. **See Day v. Volkwagenwerk Aktiengesellschaft**, 464 A.2d 1313, 1317 (Pa. Super. 1983) (citing Restatement (Second) of Judgments § 51). David Bowe and Jerome Combs clearly signed the Lease as the principal's (Gleba) agents;[19] thus, we agree with the trial court's determination regarding Tri-State Appellees.

As for Appellee Puhl, we note that only count I of the amended complaint is directed towards him.[20] In count I, Gleba seeks a decree *nisi* directing Tri-

---

[19] In **Yocabet v. UPMC Presbyterian**, 119 A.3d 1012 (Pa. Super. 2015), this Court stated:

> A corporation is a creature of legal fiction, which can act or "speak" only through its officers, directors, or other agents. Where a representative for a corporation acts within the scope of his or her employment or agency, the representative and the corporation are one and the same entity, and the acts performed are binding on the corporate principal.

**Id.** at 1028.

[20] Count II is a breach of contract claim solely against Tri-State, in which Gleba seeks a determination that Tri-State breached the terms of the Lease by failing to offer Gleba its right of first refusal regarding the purchase of the Premises. Amended Complaint at 18-19. Count III is a contractual and tortious fraud

State and Appellee Puhl to comply with the terms of the Lease, the entry of an order stating the fair market value of the Premises is $835,033.60, and a decree *nisi* directing Tri-State to sell Gleba the Premises upon its exercising its right to first purchase under the terms of the Lease. Amended Complaint at 18. In light of the trial court's finding in the Declaratory Judgment Action that the Lease terminated on June 13, 2016, we agree with the lower court that Gleba is estopped from making a claim for specific performance of said Lease. ***See McNeil v. Owens-Corning Fiberglas Corp.***, 680 A.2d 1145, 1147-48 (Pa. 1996) (providing that "when an issue of fact or of law is actually litigated and determined by a valid final judgment, and determination of the issue was essential to judgment, the determination on that issue is conclusive in a subsequent action between the parties, whether on the same or a different claim") (footnote and citation omitted).

The trial court further opined:

> All parties agree that the [L]ease was fully integrated. The two lawsuits are sufficiently similar as to constitute the same "cause of action" and "rights asserted" to invoke *lis pendens* because the "ultimate issues" in this case are and always have been whether … Tri-State properly terminated the [L]ease, when [the Lease was terminated], and whether Gleba's right of first refusal contemporaneously terminated with the [L]ease. The

claim against Tri-State Appellees, in which Gleba seeks damages for lost income, tortious damage to its reputation, and attorneys' fees and costs. ***Id.*** at 19-20. In count IV, a claim for fraud in the inducement against Tri-State Appellees, Gleba seeks unliquidated, compensatory, and punitive damages in excess of $2,000,000.00, as a result of the failure to inform Gleba in 2010 that Tri-State allegedly never had any intention of selling the Premises separate and apart from 504 Swedeland, while knowing that Gleba's right of first refusal and interest was only in the leased Premises. ***Id.*** at 20-23.

court answered those questions in the affirmative. Because the court previously determined that … Tri-State properly terminated the [L]ease before Appellee Puhl submitted a new offer for the purchase of the [Sale Properties], Gleba is estopped from making a claim for specific performance pursuant to the right of first refusal as set forth in count I[,] or breach of contract as set forth in count II of its amended complaint. Gleba's claims of fraud in counts III and IV of the amended complaint *could have been litigated* in the prior action. Counsel for Gleba raised the issues and elicited testimony in the prior action but made the tactical decision not to pursue those assertions when Gleba had the opportunity by moving to amend its answer and new matter in the prior action.

TCO at 41 (emphasis added; unnecessary capitalization omitted).

Nevertheless, Gleba attempts to differentiate the issues raised in the instant action from those litigated—or which could have been litigated—in the Declaratory Judgment Action. The claims raised in the present matter are all premised on Gleba's assertions that Tri-State never intended to sell the Premises separately, that it had intended to deny Gleba its right of first refusal at the time the Lease was executed, and that David Bowe and Jerome Combs intentionally orchestrated plausible deniability on the part of Tri-State regarding the offer received from the Puhls. Gleba argues that none of the claims raised in the instant action can be estopped because none of the events giving rise to its amended complaint occurred before the filing of Tri-State's Declaratory Judgment Action.[21] This claim is completely without merit.

_____

[21] Gleba emphasizes that it did not learn of Tri-State's fraudulent representations or the alleged scheme to provide Tri-State with plausible deniability until July 12, 2016. We acknowledge that this occurred after the commencement of Tri-State's action; however, we note that Gleba became

- 26 -

We are perplexed by Gleba's insistence that it did not have the opportunity to litigate the issues raised herein during the Declaratory Judgment Action. The record indicates that Gleba expressly raised its theory of fraudulent misrepresentation on the part of Tri-State, as well as its allegations regarding an intentionally orchestrated scheme of plausible deniability, in its pretrial statement,[22] motion *in limine*,[23] and trial brief,[24] all

_____

aware of the relevant facts *well before* the trial, which took place on August 14, 2017, and April 19, 2018.

[22] Gleba provided in its Declaratory Judgment Action pre-trial statement that it would produce evidence at trial that "Tri[-]State breached the Lease by fraudulently orchestrating a plot via it[s] agent and attorney, Paul French and [Attorney] Russell[,] to purposely conceal from Tri[-]State the identity of [b]uyers … while they addressed with unscrupulous means to terminate Gleba's right of [first p]urchase[.]"  Gleba's Reply Brief, Exhibit A, at 2 ¶ 3(B)(b).

[23] **See** Gleba's Reply Brief, Exhibit B, at 2 (stating that Tri-State "engaged in a scheme with its agent and lawyer that commenced on May 2, 2015, to defraud Gleba of its rights to purchase the Premises").

[24] In its trial brief filed in the Declaratory Judgment Action, Gleba argued:

> Tri-State's reasons to unilaterally attempt to amend the Lease, for reasons Gleba now knows was [*sic*] specifically to defraud Gleba of its right of first refusal, was [*sic*] vexatious and a breach of the Lease by Tri[-]State.  The fraud was first discovered by Gleba during discovery of Mr. French when Gleba first learned … that there were multiple buyers trying to purchase the Premises (including [Appellee] Puhl, as early as October 2015, then negotiating with French).  Gleba also by discovery learned that the buyers' identities and even their very existence was intentionally hidden from Tri[-]State by its counsel and agent, enabling Tri[-]State to plausibly deny the existence of such [b]uyers as of March 8, 2016.

Gleba's Reply Brief, Exhibit C, at 6 (emphasis omitted).

- 27 -

filed in the Declaratory Judgment Action, and all of which Gleba attaches to its Reply Brief in the present matter. Moreover, Gleba notes that it also pled fraudulent representation as an affirmative defense in its new matter. *See* Gleba's Reply Brief, Exhibit C, at 6. Accordingly, we deem Gleba's present action to be a complete waste of judicial resources and a clear attempt by Gleba for a second bite at the apple.

As the trial court so aptly concluded:

> This court has already decided the rights and responsibilities under the [L]ease in a prior action now on appeal, which involves the same parties or those in privity. Gleba fully litigated or had the opportunity to fully litigate those rights and responsibilities in the prior lawsuit. The [p]arties, including Gleba, argued these facts and issues at the prior action's pretrial conferences, in their pretrial submissions, at trial[,] and in their post-trial findings of fact and conclusions of law. This court properly ruled that the doctrines of *lis pendens* and estoppel bar Gleba from proceeding with this lawsuit.

TCO at 42. We discern no abuse of discretion or error of law by the trial court.

Lastly, to the extent that Gleba avers that the failure to join Appellee Puhl in the Declaratory Judgment Action as an indispensable party renders the Amended Decision void due to a lack of subject matter jurisdiction, we deem this issue to be waived due to Gleba's failure to develop its argument. *See* Pa.R.A.P. 2119(b). Despite several references to this issue in its statement of questions, the only mention Gleba makes of the subject in the entire argument section of its brief is the following single, nonsensical statement: "[B]y granting [s]ummary [j]udgment for [Appellee] Puhl, supposedly reliant upon the Amended Decision, the lower court implicitly found him to be an

indispensable party; whereby the lower court presently lacks subject matter jurisdiction *ab initio* and the [Declaratory Judgment A]ction must be dismissed as such." Gleba's Brief at 4. Gleba provides no further discussion and fails to cite to any legal authority whatsoever in support of its argument. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." **Estate of Haiko v. McGinely**, 799 A.2d 155, 161 (Pa. Super. 2002) (citing, *inter alia*, Pa.R.A.P. 2119(b)). "Without a reasoned discussion of the law … our ability to provide appellate review is hampered. It is not this Court's function or duty to become an advocate for [the appellant]." **Id.** (internal citations and quotation marks omitted).[25]

Accordingly, we affirm the orders granting summary judgment in favor of Tri-State Appellees and Appellee Puhl, and dismissing Gleba's amended complaint, in its entirety, with prejudice.

Orders affirmed. Case remanded for the correction of a clerical error. Jurisdiction relinquished.

---

[25] Moreover, as the trial court opined, "it is insincere on Gleba's part" to suggest that it did not have a full and fair opportunity to litigate whether the trial court lacked subject matter jurisdiction due to the absence of Appellee Puhl as an indispensable party, because this claim could have been pursued in the prior litigation. TCO at 42. "In fact, Gleba did raise the absence of [Appellee] Puhl in the Declaratory Judgment [A]ction in a motion *in limine*, which the court denied." **Id.**

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/21